*Execution be set aside.*

# FARR *v.* DUDLEY.

Where a demand for an account of the amount due is made upon a mortgagee by a creditor under the provisions of section 17, chapter 184, of the Revised Statutes, it should be for the amount due at the *time* of making the demand.

A creditor having attached the right of redemption of his debtor, made a demand upon the mortgagee of the amount due at the time of the attachment without stating what that time was. *Held*, that the mortgagee was not obliged to ascertain the time of the attachment, and that the demand was insufficient.

Farr *v.* Dudley.

A person who holds the title of a mortgagor may petition the court for a discharge of the mortgage by virtue of the provisions of chapter 131 of the Revised Statutes, provided his title to the premises be *bonâ fide* and for a valuable consideration.　If his rights to the property be invalid, he cannot sustain the petition.

PETITION, by Kimball Farr against Moses Dudley, praying the court to determine the amount due to said Dudley on a certain mortgage described in said petition, and upon the same being brought into court to decree that the mortgage be discharged.

On the 6th day of February, 1841, one Celatia Farr being seized in fee of the premises described in the petition, conveyed the same by mortgage to one Oscar Cooledge. On the 24th day of February, 1844, said Cooledge transferred and assigned said mortgage and the notes secured by it, to one Asa Marsh.

On the 1st day of January, 1847, Celatia Farr mortgaged all his right and interest in the said premises to Kimball Farr, which mortgage is still outstanding, and also the note secured thereby.

On the 14th day of August, 1847, Dudley having a valid claim against Celatia Farr, sued out a writ against him, returnable to the Court of Common Pleas in Cheshire county on the second Tuesday of September, 1847, and caused all the right and interest of the said Celatia Farr in the mortgaged promises to be attached. The writ was duly returned, and such proceedings were thereon had, that Dudley, on the second Tuesday of September, 1848, recovered judgment against Celatia Farr for $204.72 damages, and $12.42 costs of suit. Execution was seasonably issued on the judgment, and levied on property attached, before the lien acquired by the attachment expired.

In the officer's advertisement of the sale, the property was described as "all the right in equity which the said Celatia Farr had, on the 14th day of August, 1847, the day on which the same was attached, and all that he now has to redeem certain real estate," &c., describing the same correctly. · The proceedings of the officer were regular, and on the 25th of November, 1848, the property was struck off to Dudley for $134.30, and conveyed to him by sheriff's deed, in which it was described as "all the right in equity which said Farr had on the 14th day of August, 1847, of redeeming certain real estate," &c., describing the

31 *

same correctly. The levy and sale were duly completed, and the execution duly returned.

At the Court of Common Pleas in Cheshire county the said Asa Marsh recovered a conditional judgment founded on the first-mentioned mortgage, and afterwards, on the 15th day of December, 1848, a writ of possession was issued on the judgment for the premises described in this petition.

On the 12th day of December, 1849, Marsh sold and transferred all his interest in the premises and in the judgment and execution, to Dudley, who, by virtue of a writ of possession issued on the judgment on said twelfth day of December, 1849, took possession of the premises, and still holds the same.

On the 4th day of October, 1848, Dudley caused a copy of a notice to be served on Kimball Farr, which notice was in the following terms:

"*State of New Hampshire, Cheshire, ss.*

To Kimball Farr, of Groton, in the county of Worcester, and Commonwealth of Massachusetts.

I, Moses Dudley, of Chesterfield, in the county of Cheshire, attaching creditor of the estate of Celatia Farr, having attached the right of redemption in the Safford farm, so called, you claiming as being entitled to the redemption money, demand of you an account, under oath, of the amount due you from the said Celatia Farr at the time of said attachment. Chesterfield, N. H., October 4th, A. D. 1848." The notice was signed by Dudley.

No account was ever rendered by Kimball Farr, in pursuance of said demand.

The fact that Dudley had given such notice to Kimball Farr, and that he had neglected to render his account as required, was not noticed by the officer in the advertisement of the property, nor was it made public at the time of the sale.

On the 21st day of February, 1850, Kimball Farr, claiming by virtue of the second mortgage, a right to redeem against the first mortgage, caused a written notice to be served on Dudley, demanding of him an account of the amount claimed by him by virtue of the first-mentioned mortgage; which account was not rendered by him, but declined.

Farr *v.* Dudley.

The original writ in the action, *Moses Dudley* v. *Celatia Farr*, was stolen from the clerk's office before judgment was rendered in said action. A copy of the writ was filed in the clerk's office by leave of court. The copy of the officer's return is verified by the oath of the officer, but the copy of the writ is not verified.

Dudley claims that there is nothing justly due to Kimball Farr on the second mortgage, and that, therefore, the mortgage is of no validity as against attaching creditors. This fact is not admitted by Kimball Farr, but the parties agree that if the court shall be of opinion that such fact, if true, would furnish a defence against the petition, it may be contested in the Court of Common Pleas. The parties further agree, that if the court decide that on the agreed facts the petition cannot be maintained, it is to be dismissed. But if in the opinion of the court neither the agreed facts nor the alleged invalidity of the mortgage furnish a defence, such proceedings are to be had in the court of Common Pleas as to law and justice pertain.

*Lane,* with whom was *Webster,* for the petition.

1. Ch. 184, § 7, Rev. Stat. requiring an individual to make out an account under oath, and deliver it to a third person on notice and for his benefit, is tyrannical in principle, and unconstitutional and void ; because no provision is made to pay such individual the justice fee for the oath, and his other reasonable expenses. *Piscataqua Bridge* v. *N. Hampshire Bridge,* 7 N. H. Rep. 66, and cases there cited ; *Avery* v. *Maxwell,* 4 N. H. Rep. 38 ; 1 Kent's Com. 451 ; *Hampden* v. *Franklin,* 16 Mass. 76.

2. Such demand cannot be made of a person out of the jurisdiction of this State, any more than a writ can be served upon him without special provision of statute.

3. The notice in this case is insufficient. The demand should have been of the amount due at the time of making the demand, and not of the amount due at a time unknown to the individual of whom it is made. It must strictly comply with the statute, and have all that certainty required in cases of forfeiture. *Fairbanks* v. *Antrim,* 2 N. H. Rep. 107 ; 1 Black. Com. 88.

4. Dudley, on the 14th of August, attached Celatia Farr's

interest in the premises which were then subject to Kimball Farr's mortgage; advertised and sold and received a conveyance of the same in terms ; gave no intimation that he had made a demand of Kimball, which he had neglected to comply with, and everybody supposed they were subject to his mortgage of about $2000. This was a waiver on the part of Dudley of any forfeiture. *Russel* v. *Dudley*, 3 Met. Rep. 151, and cases cited ; *Folsom* v. *Great Falls Manufacturing Co.* 9 N. H. Rep. 355 ; *Flint* v. *Clinton Co.* 12 N. H. Rep. 437 ; 4 Kent, Com. 428.

5. The copy of the writ in the case of *Dudley* v. *Farr*, is not properly made and verified. *Whitcher* v. *Whitcher*, 10 N. H. Rep. 440.

6. Evidence to prove that Farr's mortgage was without consideration, is not admissible in the case supposed. *Russel* v. *Dudley*, 3 Met. Rep. 151, and cases cited.

*Cushing*, with whom was *A. P. Dudley*, for Dudley.

1. As to the first objection. The mortgagee is by law always entitled to his reasonable expenses incurred in defending and maintaining his interests under the mortgage.

2. As to the objection that the demand cannot be made out of the State. The jurisdiction of the State is over the property, and is exercised on the same principle that persons residing out of the State may be sued and jurisdiction obtained by attaching property.

3. The time of the attachment is the time to which all the rights are referred. The attaching creditor is not to be affected by any new claims, which the mortgagee may have acquired subsequent to the attachment. He has a right to know the state of the claim at the time of the attachment. The attachment being matter of public record by the filing of the writ with the town clerk, the mortgagee must take notice of it, and it therefore need not be stated in the notice. The mortgagee has the same means of knowing it as the attaching creditor.

4. The statute does not require the officer to state in his advertisement any thing about the demand and neglect to render an account. The cases cited from the Massachusetts Reports

Farr *v.* Dudley.

are based on the peculiar provisions of the statute of Massachusetts, and are not applicable.

5. The copy of the writ was filed by leave of the court. If the court below permitted the copy to be filed on oral testimony or otherwise without an affidavit on the copy, that cannot affect the decision of this case; the judgment is good until it has been set aside or reversed, and cannot be questioned in this collateral manner in a different court.

EASTMAN, J. These proceedings are based upon the eighth, ninth, and tenth sections of chapter 131 of the Revised Statutes. The eighth section provides that the mortgagee of real estate, upon a request in writing by the mortgagor, shall make out and deliver to him or his agent, a just and true account of all his demands secured by such mortgage, and all damages and costs incurred by reason of the non-performance of the condition thereof, and of all rents and profits by him received.

The ninth section provides that if he shall unreasonably refuse or neglect to make out and deliver such account, the Court of Common Pleas, upon petition by the mortgagor setting forth the facts in the case, and due notice given to the parties interested, shall determine the amount justly due after deducting rents and profits received.

And the tenth section provides, that upon such amount being brought into court and lodged with the clerk thereof, the court shall decree that such mortgage be discharged; and a copy of such decree, recorded in the registry of deeds for the county in which such lands lie, shall have the same effect as a release duly executed by the mortgagee.

By the seventeenth section of the same chapter, it is further provided that the word "mortgagor" or "mortgagee," in this title, shall be construed to include any person claiming under or representing him.

On the 6th of February, 1841, Celatia Farr was the owner of the premises, and on that day mortgaged them to one Oscar Cooledge. On the 24th of February, 1844, Cooledge sold and transferred his right and interest in the mortgage and premises

to one Asa Marsh. In 1848, Marsh obtained judgment on the mortgage, and afterwards, on the 12th of December, 1849, sold and transferred to Dudley all his right and interest in the premises and in the judgment. Dudley then, by virtue of said seventeenth section, stands in the position of mortgagee of the premises, holding under the mortgage of Farr to Cooledge, dated February 6th, 1841.

On the 1st day of January, 1847, Celatia Farr conveyed by mortgage the same premises to the petitioner, Kimball Farr. Kimball Farr, claiming under Celatia by virtue of that conveyance, stands in relation to Dudley as mortgagor; and by the sections above referred to, of chapter 131 of the Revised Statutes, has a right to request of Dudley an account of all his demands secured by the mortgage to Cooledge, and all damages and costs incurred by reason of the non-performance of the condition thereof, and of all rents and profits by him received. He has also the right, in case of Dudley's refusal or neglect to make out and deliver such account, to present such a petition as we now have under consideration, and to have the prayer of that petition granted, unless there is some legal reason for denying it.

On the 14th of August, 1847, some seven months after the mortgage from Celatia Farr to Kimball was executed, and more than two years before Dudley became the owner of the Cooledge mortgage, Dudley, having a valid claim against Celatia, caused a writ to be sued out and an attachment made of all the right of Celatia to the premises. Judgment was recovered in this suit, and the equity of redemption duly sold on execution and bid off by Dudley, and to him conveyed by the officer. This was done on the 25th of November, 1848. On the 4th of October previous, Dudley, being by virtue of this claim, a creditor of said Celatia, and having an attachment upon the property, caused a notice to be served upon Kimball Farr in accordance with the provisions of chapter 184 of the Revised Statutes. The fifth section of this chapter provides, among other things, that, by an attachment of real estate, all the debtor's interest therein shall be held to satisfy the judgment, though such interest be a right of redeeming the same upon a mortgage. By the act of June

26th, 1845, the sixth section of chapter 184 was repealed; but although repealed in form, its provisions were, by the same act, somewhat extended. By that act, as well as by said sixth section, it is provided, that any creditor attaching the right of redemption, may at any time, while such right exists, as well before as after sale thereof on his execution, pay or tender to the person entitled to the redemption money, the full sum due to him; and upon such payment or tender, the interest in such real estate derived from such mortgage, shall, as against such attachment and the rights acquired under it, cease. The seventh section of said chapter is then in these words: " Such creditor, or the officer serving the writ, may demand of the person entitled to the redemption money an account under oath of the amount due him; and if such account be not rendered within fifteen days after, or a false account shall be rendered, his said interest in such real estate shall, as against such attachment and the rights acquired under it, cease."

It has been said in the argument, that the requirements of this seventh section are unconstitutional and void, because no provision is made for compensating the mortgagee for his time and expenses; and that, therefore, no rights can be affected by such a notice and demand. It has also been said, that the judgment of *Dudley* v. *Farr* was founded upon a *copy* of a writ; that the judgment was illegally obtained; and that therefore no rights were acquired under it.

The view which the Court have taken of the case renders it unnecessary to settle those points. We might, however, suggest a *quære*, whether inasmuch as this mortgage of Celatia to Kimball bears date subsequent to the provisions of the statute referred to, the party did not take it subject to all the general provisions of law relating to mortgages as laid down in our statutes. And whether the copy used in entering up the judgment having been used by *order of the Court*, that judgment can be impeached by any collateral proceedings.

But the settlement of these questions is not necessary for the decision of this case. The notice which Dudley caused to be served on Kimball Farr was insufficient. It did not require the

amount due at the time of the demand, nor did it state the time of the attachment. The rights which a mortgagee has to the land mortgaged are oftentimes his only reliable security for the payment of his debt ; the personal security may be entirely worthless. Our statutes require much formality in the execution and recording of mortgages of real estate, and if the rights of an individual thus acquired are to be taken away by the simple act of an attaching creditor's giving a notice for an account of the claim, and a failure to comply with the requirements of that notice, we think the attaching creditor should also be held to comply strictly with all the substantial requisitions of the statute. The account is to be rendered within fifteen days of the time of giving the notice. It may often be no ordinary labor to render this account. Payments may have been made, rents and profits may have been received, and the situation of the parties may be such, as to residence or otherwise, as to require the greatest industry in order to comply with the demand. In some instances where the mortgagee resides in another State or government, it might be impossible. To add to this, then, the necessity of ascertaining the time of the attachment, as in this case, and to compel a party to go to the town-clerk's office, that no error might be committed in this respect, would be unreasonable, and what we think the Legislature never intended. Had the notice stated the day of the attachment, and requested the account up to that time, it might, perhaps, have been sufficient.

The object of the statute appears to be, to enable creditors to ascertain the situation of the real estate of their debtors, and to hold the same upon payment of the debts secured by the mortgages, if they shall elect so to do. And by the provisions of said seventh section of chapter 184, the Legislature seem to have contemplated that after an attachment made, the creditor might elect not to enter his action upon ascertaining the amount of the incumbrances. Hence the section provides that the creditor or officer serving the writ may make the demand, and that the account shall be rendered within fifteen days. The attaching creditor having the right upon paying the sum due the mortgagee to have that incumbrance removed, whether before or after sale

on his execution, the account which it becomes necessary for him to have is the amount due at the time of the demand. It is then that he proposes to pay the money and remove the incumbrance. The amount of the claims may have been much reduced after the attachment. Rents and profits may have been received and moneys paid by the debtor. This would form a good reason why the demand should relate to the time of the notice and not to the time of the attachment. But, independent of any particular reason for such a construction, the statute itself, it seems to us, refers to no other time. And any other construction might lead to much embarrassment in carrying out the intention of the Legislature.

Holding the notice to be bad, the petitioner's mortgage is not thereby invalidated, and he will be entitled to have the prayer of his petition granted, if he is himself in the situation to make the application. In order to do that, he must be either the mortgagor or some one claiming under or representing him; and this claim should be a valid, *bonâ fide*, subsisting demand. The question, then, of the validity of the mortgage by virtue of which this petition is made, is one to be settled, if it is disputed, before this petition can be granted. The person making the demand must have some valid rights before he is authorized to make it. Without those rights he has no more authority in the matter than an entire stranger to the whole transaction. The conveyance between him and the grantee may be good even without consideration, but when the rights of third parties come to be affected it presents a different aspect; and, should it be made to appear that the mortgage from Celatia Farr to Kimball was without consideration, then this petition cannot be maintained. According to the provisions of the case the validity of the mortgage must be tried in the court below, and upon that question being decided, the petition will be disposed of upon the principles here settled.